CAMBRIDGE STATE BANK, et al., Norwest Bank Duluth, National Association (formerly First National Bank of Duluth), Respondents,

v.

John P. JAMES, Commissioner, Department of Revenue, and the State of Minnesota, Appellants.

No. C0–89–2097.

Supreme Court of Minnesota.

Feb. 14, 1992.

Hubert H. Humphrey, III, Atty. Gen., Barry R. Greller, Special Asst. Atty. Gen., Gregory Huwe, Asst. Atty. Gen., St. Paul, for appellants.

Laurence Waldoch, James McCarthy, Lindquist & Vennum, Minneapolis, and Andrew J. Mitchell, Christopher J. Dietzen, Larkin, Hoffman, Daly & Lindgren, Bloomington, for Cambridge State Bank, et al.

Walter Pickhardt, Robert L. Schnell, Jr., Faegre & Benson, for Norwest Bank Duluth.

Heard, considered and decided by the court en banc.

YETKA, Justice.

The court first decided this tax refund case on July 20, 1990. *Cambridge State Bank v. Roemer*, 457 N.W.2d 716 (Minn. 1990). The United States Supreme Court granted certiorari, vacated, and remanded the cause to this court following its decision in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

When the case was first before this court, respondent banks challenged Minnesota's pre–1983 bank excise tax, Minn.Stat. § 290.361 (1984) (repealed 1987), which included interest from federal obligations in computing net income (on which the bank tax was measured) while exempting interest from certain state obligations. The banks claimed that the tax was a discriminatory income tax in violation of 31 U.S.C. § 3124(a) (1982). That section reads in pertinent part:

> (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, *except*—
>
> > (1) *a nondiscriminatory franchise tax* or another nonproperty tax instead of a franchise tax, imposed on a corporation * * *.

*Id.* (emphasis added).

We held that the tax was a franchise rather than income tax, but agreed with the banks and the trial court that the tax was discriminatory because of its disparate treatment of state and federal obligation

interest income. *Cambridge State Bank,* 457 N.W.2d at 719. Even though we found the tax discriminatory, we denied the banks a refund of the taxes paid on the federal interest income. We articulated three reasons for this denial.

First, we held that the banks should have been estopped from attacking the constitutionality of the bank tax's inclusion of federal obligation interest income because they had accepted the benefits of the state obligation interest exemptions. *Cambridge State Bank,* 457 N.W.2d at 720. Justice Kelley did not join in this part of the court's opinion. *Id.* at 723.

Second, we held that the proper remedy in this case was to sever the unconstitutional provisions of the tax because it was clear that the legislature would have enacted the tax statute without the unconstitutional provisions. *Id.* at 720–21.

Finally, we held that the United States Supreme Court's decision in *Memphis State Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), which held a nearly identical tax unconstitutional and was the authority under which this court found Minnesota's bank tax discriminatory, applied prospectively only under the three-part test in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The *Chevron* case established the factors governing the non-retroactive application of judicial decisions. *Cambridge State Bank,* 457 N.W.2d at 722.

On August 2, 1991, this court ordered that the parties brief the specific issue of what effect, if any, the *Beam* decision has on the holdings in this case.

The United States Supreme Court's vacation of *Cambridge State Bank v. Roemer* leaves that decision without force or effect. *State v. Hershberger,* 462 N.W.2d 393, 395 (Minn.1990) (*citing Threlkeld v. Robbinsdale Fed'n of Teachers, Local 872, AFL–CIO,* 316 N.W.2d 551, 552 (Minn.), *appeal dismissed,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982)). This court is not bound by and need not defer to the trial court's

determination of legal questions in this case. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

The issues presented by this remand order are:

I. Does *Beam* require retroactive application of the substantive rule of federal law established in *Memphis Bank & Trust Co. v. Garner?*

II. Does *Beam* preserve the state's right to raise procedural bars to an otherwise required retroactive application of a federal substantive rule?

III. Does *Beam* preserve the state's right to fashion an appropriate remedy for the violation of a substantive rule of federal law, at least where the case originates in state court?

I.

■ This court held that the rule enunciated in *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), invalidated Minnesota's bank tax as discriminatory under 31 U.S.C. § 3124(a) (1982), but denied refunds to the banks on the ground that the *Memphis Bank* rule applied prospectively under *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Cambridge State Bank,* 457 N.W.2d at 722–23. Although there is no majority rationale in *Beam,* six justices agreed that the prospective application of a rule announced in any given civil case is either prohibited or severely limited by constitutional restraints.[1] We hold that our original prospective application holding does not survive in *Beam's* wake.

In *Beam,* the James B. Beam Distilling Company had sought a tax refund of $2.4 million from the State of Georgia for the imposition of a liquor tax that distinguished between imported and local alcoholic products. 111 S.Ct. at 2442. In *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the U.S. Supreme Court had invalidated, under

---

**1.** Justice Souter announced the judgment of the Court and delivered an opinion in which Justice

Stevens joined. Justices White, Blackmun, Marshall and Scalia concurred in the judgment.

the commerce clause, an identical Hawaiian tax. The question squarely presented to the Court in *Beam* was whether the *Bacchus* ruling should apply retroactively to claims arising on facts antedating that decision. The state court, using a *Chevron Oil* analysis, had held that *Bacchus* did not apply retroactively. 111 S.Ct. at 2442.

Justice Souter's *Beam* opinion held that the retroactive application of a rule announced in a civil case is, in the first instance, a choice-of-law (rather than remedial) question " 'between the principle of forward operation and that of relation backward.' " 111 S.Ct. at 2443 (*quoting Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932)). Where the decisional rule derives from federal law, constitutional or otherwise, the choice-of-law question of retroactivity is a federal one. *Id.* The general rule is one of retroactivity; if an opinion does not "reserve the question whether its holding should be applied to the parties before it * * * it is properly understood to have followed the normal rule of retroactive application in civil cases." *Id.* at 2445. Thus, under Justice Souter's analysis, it is error "to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. * * * [P]rinciples of equality and *stare decisis* * * * prevail[ ] over any claim based on a *Chevron Oil* analysis." *Id.* at 2446.

Justice Souter's main concern with the *Chevron Oil* analysis is the consideration of equities, in the first instance, in determining whether a rule of law should not apply retroactively. *Id.* at 2448 ("The applicability of rules of law are not to be switched on and off according to individual hardship * * *."). Equitable and reliance interests, in Justice Souter's view, may be considered "when deciding remedial issues in particular cases," but only after the choice-of-law question has been settled. *Id.*

Our conclusion that the rule in *Memphis Bank* should not apply retrospectively under *Chevron Oil* fails under Justice Souter's analysis. First, *Memphis Bank* did not reserve the question of whether its holding should be applied to the parties before it; therefore, its holding applied both to those parties and retroactively. The state argues here that the United States Supreme Court was not required and did not reach the retroactivity question because the *Memphis Bank* parties stipulated to the result. However, the stipulation as to the result confuses the choice-of-law question with that of remedy. Remedial factors have no place in the consideration of whether a substantive rule of law applies in the first instance in a given situation. Moreover, *Memphis Bank*'s silence on the issue requires application of the "normal" rule of retroactivity.

Justice White concurred in *Beam* to emphasize that the *Chevron Oil* analysis might still apply in some situations, such as where a new rule is announced as a result of an express overruling of existing precedent. 111 S.Ct. at 2448–49. The concurrences of Justices Blackmun and Scalia conclude that the prospective application of new decisional rules "breaches [the Supreme Court's] obligation to discharge our constitutional function." *Id.* at 2449–51. Each of these three concurrences invalidates this court's holding that *Memphis Bank* applies prospectively only under *Chevron Oil.*

In light of the *Beam* decision, we hereby reverse our original conclusion in *Cambridge State Bank* that the rule in *Memphis Bank* applies only prospectively.

## II.

■ This court held that the respondent banks were estopped, under the acceptance-of-benefits doctrine in tax cases, from asserting the unconstitutionality of the Minnesota bank tax. Because the banks accepted the tax benefits of the exemption for state obligation interest, the banks improperly challenged the unconstitutionality of the bank tax. *Cambridge State Bank*, 457 N.W.2d at 720. Although we have questioned the continued vitality of the acceptance-of-benefits doctrine in other areas of law, in *Cambridge State*

*Bank,* we reaffirmed the doctrine's use in tax cases. *Id.* We do so again on remand.

In stressing the distinction between the choice-of-law question of retroactivity and that of remedy, Justice Souter indicated that "[n]othing we say here deprives [respondent state] of [its] opportunity to raise procedural bars to recovery under state law" and that *Beam's* retroactivity holding applies "with respect to all others not barred by procedural requirements or res judicata." 111 S.Ct. at 2446. We think this court's estoppel holding is one such state procedural bar.

Respondent banks argue that the estoppel theory is simply another method of applying the holding in *Memphis Bank* prospectively. We do not believe this argument undercuts *Beam's* express holding that this court may rely on an established state procedural bar to challenge a tax statute unless that prohibition is itself unconstitutional. *Beam,* 111 S.Ct. at 2443 (remedial inquiry subject to constitutional thresholds); *see also McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Florida,* 496 U.S. 18, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990) ("Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause.").

▮ Indeed, respondent banks have asserted that the estoppel theory is unconstitutional. They argue that the estoppel theory "in essence" required them to pay a tax that was not imposed on anyone else as a precondition to challenge the federal obligation interest taxation (*i.e.,* they would have had to pay a tax on the exempted state bond interest before they would be allowed to challenge the tax on the federal obligation interest).

This argument ignores a significant point, however. For the 1979–80 tax years,[2] Minnesota law did not require prepayment in order to challenge the validity of a tax. *See* Minn.Stat. § 271.09, subd. 3 (1978) (When appealing to the tax court, "the taxpayer shall pay at least the amount of the tax or other obligation conceded by the taxpayer to be due, *if any,* when it becomes due * * *." (Emphasis added.)). Respondent banks argue that the tax court did not have the authority to decide the constitutionality of a tax after our decisions in *In re McCannel,* 301 N.W.2d 910, 920 (Minn.1980), and *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 139 n. 1 (Minn.1980). However, we believe that this argument confuses the issue of whether the banks could have challenged the tax at the time it was due without first paying it with the procedures for claiming a refund under the tax statute.

Before 1980, the tax court had subject matter jurisdiction over constitutional challenges to taxes assessed. *Erie Mining Co. v. Commissioner of Revenue,* 343 N.W.2d 261, 264 (Minn.1984).[3] There was no prepayment requirement for bringing an appeal to tax court until 1987. *See* Minn. Laws ch. 268, art. 14, § 12 (codified at Minn.Stat. § 271.061 (1987 Supp.)) (repealed 1989). We think it is reasonable to assume that the banks would have avoided paying the tax at the time it was due by bringing their claims in tax court. More important, however, is the fact that, in each year at issue, the banks *could have* avoided paying the tax before challenging its constitutionality. Thus, there were sufficient procedural safeguards against unlawful ex-

---

2. The parties stipulated that 1979 would be the "test year" for purposes of this litigation. Respondent banks have filed claims including 1980–1983 as well.

3. In *Erie Mining,* we held:
   All tax matters over which the tax court has jurisdiction should be filed with the tax court. If any party raises a constitutional issue, the tax court should stay the proceedings and refer the constitutional question to the district

court. The district court may either decide the constitutional issue or refer the matter back to the tax court which will then have subject matter jurisdiction to rule initially on the constitutional issue. If the tax court should declare any matter unconstitutional and no appeal is taken to this court, that ruling shall only be the law of the particular case involved.

343 N.W.2d at 264.

actions of the tax *at the time it was assessed.*

Even when there was a prepayment requirement, a taxpayer could avoid prepayment by showing:

(1) That the proposed review is to be taken in good faith;

(2) That there is probable cause to believe that the taxpayer may be held exempt from the tax or that the tax may be determined to be less than 50 percent of the amount due; and

(3) That it would work a substantial hardship upon petitioner to pay the tax.

Minn.Stat. § 290.531 (1982) (repealed 1987).

Thus, respondent banks are incorrect in arguing that there were no "predeprivation processes" available to challenge the tax on the federal obligation interest at the time it was paid. Moreover, the processes available in Minnesota appear to satisfy the federal Constitution's due process requirements. *See McKesson,* 110 S.Ct. at 2250 (In satisfying the commands of the due process clause, "[t]he State may choose to provide a form of 'predeprivation process,' * * * by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment * * *.").

■ Respondent banks also assert that the acceptance-of-benefits estoppel doctrine applies only where a claimant receives a benefit from the very statute challenged as unconstitutional. *See Kadrmas v. Dickinson Pub. Schools,* 487 U.S. 450, 457, 108 S.Ct. 2481, 2486, 101 L.Ed.2d 399 (1988). While respondent banks note that they challenged the tax on the federal obligation interest, they fail to note that the tax was discriminatory *precisely because of* the state obligation interest exemptions. In other words, a tax based in part on federal obligation interest income is not *per se* discriminatory; only when that tax is read in conjunction with the state exemptions does its imposition become discriminatory.[4] Accordingly, although the tax and exemptions were imposed and granted in different chapters of Minnesota statutes, they

---

**4.** In *Kadrmas,* there was no such nexus between the statute granting the "benefit" and that being

must be read as part of one taxation scheme to be challenged in the first instance. Respondent banks' argument would elevate form over substance.

■ Finally, respondent banks assert that the "benefit" they received from the state obligation interest exemptions is "wholly illusory" because the state obligation exemptions caused the interest rates for those obligations to be lower than they would have been without the exemption. The trial court's findings of fact substantially support this claim.

On the other hand, the amount of profit generated (or not) by the lower interest rate is not the measure of whether the banks received a "benefit." On the contrary, the banks did not pay taxes on *any* of the interest earned on the subject state obligations. Regardless of the interest rate the banks charged, the exemption from taxation was the benefit they received. Indeed, according to the trial court's findings, the state obligation interest exemptions "alone increase[d] the interest rates on certain federal obligations." Thus, the banks not only operated free from tax on the state obligation interest, but also received higher rates from federal borrowers.

Accordingly, we reaffirm our original acceptance-of-benefits estoppel holding as a state procedural bar to respondents' claims because the *Beam* decision expressly allows a state procedural law to prohibit the otherwise required retroactive application of a judicial decision.

### III.

■ This court's third holding in *Cambridge State Bank* denied the respondent banks a refund of the taxes paid on the federal obligation interest for the years at issue. The court based its denial on the sufficiency of severance as a remedy for the discrimination caused by the tax. Under Minnesota's severance statute, Minn. Stat. § 645.20 (1988), we indicated that we

challenged. 487 U.S. at 457, 108 S.Ct. at 2486.

could properly sever the discriminatory portion of the bank tax (*i.e.*, the provisions exempting the state obligation interest). *Cambridge State Bank*, 457 N.W.2d at 720. When the legislature first enacted the bank tax, there were no state obligation interest exemptions; accordingly, the later exemptions (which caused the defect in the tax) cannot be said to have "invalidated the *entire* original Act." *Id.* at 720 (emphasis in original).

In addition, we ruled that the severance of the state exemptions in this case satisfied the due process requirement of providing an adequate post-deprivation remedy. *Id.* at 721. If a tax is unlawful under the commerce clause, the actual imposition of a curative tax or a refund of the tax exacted is required to equalize the comparative economic disadvantage caused by the discriminatory tax. *See id.; see also McKesson*, 110 S.Ct. at 2247 ("[T]he Due Process Clause * * * obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation."). Here, there was no comparative economic disadvantage among competitors—each of the banks held both federal and state obligations. Accordingly, neither actual imposition of a curative tax nor refund of taxes paid was required. *Cambridge State Bank*, 457 N.W.2d at 721.

Finally, we noted that we would have assessed and collected a tax to cure the constitutional infirmity of the tax in question in spite of the Revenue Department's stipulation that it would not actually collect such a curative tax. *Id.* However, we did not impose the curative tax because we reasoned that, "[w]ere it not for our conclusion that the *Memphis Bank* case [applies prospectively] * * * we would order the Revenue Department to assess and collect the tax attributable to the state obligation interest income." *Id.* at 722.

In *Beam*, Justice Souter noted that, "[s]ubject to possible constitutional thresholds, the remedial inquiry is one governed by state law, at least where the case originates in state court." 111 S.Ct. at 2443 (citations omitted); *accord American Trucking Ass'ns v. Smith*, 496 U.S. 167,

110 S.Ct. 2323, 2348, 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting) ("The remedial effect a decision of federal constitutional law should be given is in the first instance a matter of state law."). Moreover, requiring retroactive application of a decisional rule does not deprive a party from demonstrating reliance and equitable interests in determining the nature of the remedy that must be provided. *Beam*, 111 S.Ct. at 2447–48; *see also United States v. Estate of Donnelly*, 397 U.S. 286, 297, 90 S.Ct. 1033, 1039, 25 L.Ed.2d 312 (1970) (Harlan, J., concurring) ("To the extent that equitable considerations, for example, 'reliance,' are relevant, I would take this into account in the determination of what relief is appropriate in any given case.").

Thus, the *Beam* decision fundamentally affects the analysis a state court must undertake in fashioning a remedy in a case of this type. First, the "constitutional thresholds" to which Justice Souter referred were those enunciated in *McKesson*. There, the U.S. Supreme Court unanimously held that prospective relief from a tax invalidated under the commerce clause, by *itself*, does not satisfy the requirements of the due process clause where "a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a post-payment refund action in which he can challenge the tax's legality." 110 S.Ct. at 2247.

We distinguished *McKesson* on the ground that tax schemes invalidated under the commerce clause involve considerations of comparative economic disadvantage which are not present here. Here, the tax is applied to all banks in an equal manner. Respondent banks also contend that the United States Supreme Court's decision in *Montana National Bank v. Yellowstone County*, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673 (1928), stands for the proposition that a refund of the taxes paid is the only remedy for a discriminatory tax even where the tax is not invalidated under the commerce clause. However, that case involved the same comparative economic disadvantage—between federal- and state-chartered banks—as that involved in other commerce clause tax cases.

Moreover, *McKesson* is distinguishable on the ground that respondent banks' payment of the tax was not made under duress in the sense that payment was compelled in order to challenge the tax. As noted in part II above, Minnesota provided the banks with the required "meaningful opportunity to withhold payment and to obtain a predeprivation determination of the tax assessment's validity." *McKesson,* 110 S.Ct. at 2251 (footnote omitted). We think that purely prospective relief—the severance of the state obligation interest exemptions—is a sufficient remedy in this case.

The corporate banks in this case are in no better position than would be an individual taxpayer who challenged an entire income tax on the basis that only one part of the tax has been deemed infirm. For example, a taxpayer might be required by Congress or a state legislature to include income from certain investments, both state and federal, for income tax purposes. If the United States Supreme Court later held that the portion of the tax on federal investments were invalid, the taxpayer would not get far in arguing that the income on the state investments is exempt from taxation as well, resulting in no tax liability.

We think the severance remedy is also appropriate because the legislature has mandated it as a cure for an unconstitutional exaction of a tax. In 1983, after *Memphis Bank* was decided, the legislature cured the discriminatory impact of the tax by abolishing the exemptions for state obligation interest in the computation of gross income. *See* 1983 Minn.Laws ch. 213. In according proper deference to what the legislature has deemed an appropriate remedy, we think we are justified in holding severance to be a suitable cure for the tax's discriminatory impact in this case.

Additionally, this court is entitled to consider "reliance" interests in fashioning a remedy in this case. *Beam,* 111 S.Ct. at 2447–48. Respondent banks may be correct in arguing that the state legislature would not have enacted the state obligation interest exemptions had it "relied" on state and federal case law. However, it would be incorrect to argue that the legislature would not have enacted a bank franchise tax based, at least in part, on federal obligation interest income. We believe the "reliance" interests to which Justices Souter, Stevens and Harlan all referred in this context are not so narrowly defined as to include only "reliance" on case law. Indeed, as this court pointed out in *Cambridge State Bank,* 20 years of unchallenged reliance on the validity of the tax involved here counters the notion that either the banks or the state did not "rely" on the tax scheme. 457 N.W.2d at 722.

We decline to penalize the state for relying on the tax scheme in this case by ordering a refund. We still believe the most appropriate remedy is to impose a curative tax. However, we believe the imposition of such a curative tax would be unconstitutional at this late date.[5] Moreover, in light of the lower interest rates which the banks charge to its state borrowers, such a tax would penalize the banks unfairly.

Finally, the state's reliance interests are inextricably intertwined with the equities of the instant case. As we have noted, it would be inequitable, nearly impossible, and probably unconstitutional to impose a curative tax in this case. Nevertheless, simply because a curative tax cannot be imposed to remedy the discriminatory tax, it does not follow that the only alternative remedy is to refund the tax exacted. This reasoning would require us to ignore the state's equitable interests (its potential liability) while "overlooking" the fact that the

---

**5.** Although a curative tax for the years 1979–83 would cure the discrimination, we think it would be unfair to impose and collect a tax on the banks in this case. Indeed, the U.S. Supreme Court has held that

the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposi-

tion of a significant tax burden may be "so harsh and oppressive as to transgress the constitutional limitation," depending on "the nature of the tax and the circumstances in which it is laid."

*McKesson,* 110 S.Ct. at 2252 n. 23 (*citing Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938)).

banks could have challenged the tax at the time it was paid.[6] In this light, the equities of the case require the denial of the refunds requested.

We, therefore, reaffirm our original denial of the tax refunds sought by respondent banks, holding that the severance remedy is sufficient to cure the discriminatory tax in this case.

The judgment of the trial court is affirmed in part and reversed in part.

**6.** It is interesting to note that, in the first appeal to this court, the banks argued vigorously that *Memphis Bank* did not establish a new rule of law that would allow prospective application. Now, of course, the banks contend that their failure to challenge the tax at the time it was paid was due to a non-existent "prepayment" requirement.