Donald G. STELZNER, et al., Relators,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. C0–00–715.

Supreme Court of Minnesota.

Feb. 8, 2001.

Regan & Vincent, PLC, Thomas M. Regan, Minneapolis, for Relators.

Mike Hatch, Attorney General, Craig R. Anderson, Assistant Attorney General, Tax Litigation Division, St. Paul, for Respondent.

## OPINION

BLATZ, Chief Justice.

Relators Donald and Donna Stelzner appeal from the Minnesota Tax Court's decision affirming an order of the Commissioner of Revenue assessing Minnesota state income taxes, penalties, and interest for each of the taxable years from 1987 through 1993. On appeal to the tax court, the Stelzners argued that they were domiciled in Nevada, not Minnesota, and raised federal constitutional issues challenging the tax assessment. In the alternative, the Stelzners argued that the commissioner should be equitably estopped from collecting the taxes, penalties, and interest and that they had shown reasonable cause to support abatement of late filing and late payment penalties. The tax court found that the Stelzners were nondomiciliary residents under Minn.Stat. § 290.01, subd. 7(2) (2000), the nondomiciliary resident statute. In addition, the tax court concluded that application of the nondomiciliary resident statute to tax the Stelzners' entire income does not implicate the Commerce Clause and rejected the Stelzners' other constitutional challenges, equitable estoppel claim, and abatement arguments. In this appeal, the Stelzners assert that, as nondomiciliary residents, Minnesota's taxation of their income earned primarily in interstate commerce violates the Commerce Clause of the United States Constitution. In the alternative, the Stelzners argue that good faith reliance on their tax preparer to file all necessary returns constitutes reasonable cause to abate late filing and late payment penalties. We affirm.

The essential facts underlying this case are not in dispute. Donald and Donna Stelzner were born and raised in Minneso-

ta and were married in Nevada in 1958. The Stelzners worked in various positions in the gaming industry and also engaged in acquiring, improving, and selling residential property in Nevada and Minnesota, including a residence located on West Calhoun Parkway in Minneapolis, Minnesota. The Stelzners resided there from 1983 until mid–1999, during which time the Stelzners spent more than $400,000 remodeling and expanding the property. From 1983 through 1993, the Stelzners received homestead status for the West Calhoun Parkway property. During the 1987 through 1993 audit period, the Stelzners also occupied a studio condominium in Las Vegas, Nevada.

The Stelzners spent the majority of their time in Minnesota during the audit period, with Donald Stelzner spending approximately 300 or more days per year and Donna Stelzner spending more than 350 days per year. Nonetheless, the Stelzners considered themselves residents and domiciliaries of Nevada and maintained Nevada drivers' licenses and voter registration. An audit of the Stelzners' 1984 tax return by the Internal Revenue Service determined that the Stelzners were domiciliaries of Nevada for federal tax purposes and allowed office and other "away from home" expense deductions for the West Calhoun Parkway property.

In the 1970's, Donald Stelzner developed a foreign currency exchange business serving the casino industry in New Jersey, Illinois, Nevada, some Native American tribal lands, and the Canadian Province of Ontario. The resulting companies, Bond Mortgage Forex and Bond Mortgage New Jersey, are Nevada-based general partnerships with the Stelzners as the only partners. At their high point, the Stelzners' business operation accounted for approximately 85 percent of the foreign currency exchange generated by the Nevada and New Jersey casino industry. Recently, competition from banks and exchange houses has significantly reduced the Stelzners' customer base.

Throughout the audit period, the Stelzners' income was generated primarily from this currency exchange business. Donald Stelzner traveled to client casinos, purchased the accumulation of client casinos' foreign currency with U.S. cash or cash equivalents, provided on-site inspection and verification, and arranged for transportation of the currency to foreign banks or other repositories. The Stelzners monitored currency accumulations and rates and consolidated currency for movement to foreign banks and exchange houses at a favorable exchange margin. In the interim, currency was secured in bank vault facilities or on properties owned or leased by the Stelzners, including the West Calhoun Parkway property. During the audit period the Stelzners performed the monitoring functions primarily from Minneapolis. The actual currency transactions occurred primarily outside of Minnesota.

Because this mode of operation required Donald Stelzner to transport large amounts of U.S. and foreign currencies and negotiable instruments, safety was a major concern. The Stelzners believed that living outside the geographic area of client casinos increased their personal security. Minneapolis was chosen, in part, because the Stelzners believed that Minneapolis would be viewed as an inconvenient and unlikely location for routing foreign currency. The Stelzners also recognized that Minneapolis was well-suited for their business given the location of the Minneapolis/St. Paul airport and the Federal Reserve Bank. Based on these considerations of security and convenience, the Stelzners purchased the West Calhoun Parkway property and made modifications to provide additional security.

In the early 1980's, the Stelzners hired Dale Korpi, an attorney and certified public accountant, to prepare their tax returns. Donald Stelzner gave Korpi two or three years of previous returns and explained that he and his wife were domiciled in Nevada, where no state income tax

return is required, but had business purposes for being in Minnesota. As he had with previous tax preparers, Donald Stelzner informed Korpi that the Stelzners had no Minnesota income and had never filed a Minnesota tax return. This representation was consistent with Minnesota tax law because, at that time, Minnesota's definition of "resident" for individual income tax purposes excluded individuals domiciled in another state. Minn.Stat. § 290.01, subd. 7 (1986) (defining resident as "any individual domiciled in Minnesota and any other individual maintaining an abode therein * * * who shall not * * * have been domiciled outside the state").

In 1987, the definition of "resident" was amended to include "any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota * * * ." Act of May 28, 1987, ch. 268 art. 1, § 10, 1987 Minn. Laws 1044–45 (codified at Minn.Stat. § 290 .01, subd. 7(2) (2000)). Sometime during or after 1987, Korpi informed Donald Stelzner of an amendment to the Minnesota income tax law that modified the definition of resident. Stelzner testified in the tax court proceedings that he intended to follow up on the comment that a change had occurred, but did not pursue it any further. Korpi continued to file only federal returns for the Stelzners.

After an audit of the taxable periods from 1987 through 1993, the commissioner concluded that the Stelzners were nondomiciliary residents of Minnesota for each year of the audit period and issued an order finding the Stelzners liable for Minnesota income taxes, penalties, and interest for each of those years. The total amount assessed was $402,673.87. The Stelzners filed an administrative appeal, which the commissioner denied. The Stelzners appealed that determination to the Minnesota Tax Court.

Before the tax court, the Stelzners challenged the commissioner's assessment claiming that they were domiciliaries of Nevada, not Minnesota, and that application of Minn.Stat. § 290.01, subd. 7(2), the nondomiciliary resident statute, to tax their entire income violated the Commerce Clause, the Equal Protection Clause, and the Due Process Clause of the United States Constitution. In the alternative, the Stelzners argued the State should be equitably estopped from assessing the income taxes because the State provided false and misleading information and any penalties should be abated because the Stelzners could show reasonable cause for failing to file Minnesota income tax returns during the audit period.

Pursuant to the process outlined in *Erie Mining Co. v. Commissioner of Revenue,* 343 N.W.2d 261 (Minn.1984), the tax court referred the Stelzners' federal constitutional issues to the Ramsey County District Court, and the district court subsequently transferred the issues back to the tax court for decision. The tax court affirmed the commissioner's determination assessing income tax liability for the Stelzners' entire income during the audit period. Because the tax court determined the Stelzners were nondomiciliary residents under Minn.Stat. § 290.01, subd. 7(2), it was not necessary to reach the issue of whether the Stelzners were domiciled in Nevada. In addition, the tax court found that Korpi informed the Stelzners about changes to the Minnesota income tax law modifying the definition of "resident." The tax court also concluded that application of the nondomiciliary resident statute to tax the Stelzners' entire income did not implicate the Commerce Clause, and rejected the Stelzners' other constitutional challenges, equitable estoppel claim, and abatement arguments. Following the trial, the tax court denied the Stelzners' motion to amend the findings of fact and judgment.

The Stelzners now appeal on writ of certiorari arguing that, as nondomiciliary residents, Minnesota's tax on their entire income generated primarily from transactions occurring outside of the state violates

the Commerce Clause of the United States Constitution. In the alternative, the Stelzners argue that late filing and payment penalties should be abated because the Stelzners can show reasonable cause for failing to file Minnesota individual income tax returns.

## I.

 First, the Stelzners contend that, as applied to them, Minnesota's tax on nondomiciliary residents' entire individual income violates the Commerce Clause because their entire income is subject to state tax, even though the income is derived primarily from transactions in interstate commerce. The tax court rejected the Stelzners' Commerce Clause argument, and we review this legal conclusion of the tax court de novo. *Nagaraja v. Comm'r of Revenue*, 352 N.W.2d 373, 376 (Minn.1984).

The income tax obligation the Stelzners challenge results from the application of three statutes: Minn.Stat. § 290.01, subd. 7(2), which defines the Stelzners as nondomiciliary residents; Minn.Stat. § 290.014, subd. 1 (2000), which provides that the entire net income of resident individuals will be taxed; and Minn.Stat. § 290.17, subd. 1(a) (2000), which excludes resident individuals from the allocation rules allowing apportionment of income among the states where the income was generated. The combined effect of these statutes subjects the Stelzners' entire income to Minnesota state income tax. The Stelzners argue this places a disproportionate state tax burden on income earned primarily through transactions occurring outside of Minnesota in violation of the Commerce Clause.[1]

 The Commerce Clause states that "[t]he Congress shall have power * * * To regulate commerce * * * among the several states." U.S. Const. art. I, § 8, cl. 3. While the express language is an affirmative grant of power to Congress, the Commerce Clause has long been held to implicitly limit the states' power to regulate interstate commerce. *Quill Corp. v. North Dakota*, 504 U.S. 298, 309, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). This negative implication, known as the "dormant" Commerce Clause, bars state action that discriminates against or places an undue burden on interstate commerce. *Quill Corp.*, 504 U.S. at 310, 312, 112 S.Ct. 1904.

 Commerce Clause challenges require a two-step inquiry. First, we must determine whether application of Minnesota's nondomiciliary resident statute to tax the Stelzners' entire income implicates the Commerce Clause. *Luther v. Comm'r of Revenue*, 588 N.W.2d 502, 510 (Minn.), *cert. denied*, 528 U.S. 821, 120 S.Ct. 66, 145 L.Ed.2d 57 (1999). If so, the second question is whether the Commerce Clause is violated. *Luther*, 588 N.W.2d at 510–11. Because states have wide latitude in establishing their taxation schemes, and statutes will be declared unconstitutional only when absolutely necessary, the Stelzners bear a heavy burden at each step of the inquiry. *Id.* at 508.

 In order to show that the Commerce Clause is implicated, the Stelzners must demonstrate that Minnesota's taxation of their entire income has a "substantial effect on an identifiable interstate economic activity or market." *Luther*, 588 N.W.2d at 511. "The dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 300, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). Therefore, the dormant Commerce Clause will not apply unless there is actual or prospective competition between entities in an identifiable market *and* state action

---

1. Because the Stelzners claim to be domiciled in Nevada, where there is no individual state income tax, there is no issue of multiple taxation in this case. While not applicable in the instant case, we note that Minn.Stat. § 290.06, subd. 22 (2000) protects nondomiciliary residents from multiple taxation by allowing a credit for income taxes paid to the domicile jurisdiction to offset Minnesota income tax liability.

that either expressly discriminates against or places an undue burden on interstate commerce. *Tracy,* 519 U.S. at 300, 117 S.Ct. 811. Furthermore, this impact must be more than merely incidental. *United States v. Lopez,* 514 U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

We recently addressed a Commerce Clause challenge to Minnesota's nondomiciliary resident statute in *Luther v. Commissioner of Revenue,* 588 N.W.2d at 510–12. In *Luther,* the taxpayer was a Florida domiciliary who owned a home in Minnesota and also spent time in Minnesota to attend board of directors' meetings for a Minnesota corporation. *Id.* at 504–05. The commissioner determined that Luther was a nondomiciliary resident under Minn. Stat. § 290.01, subd. 7(2), because she owned a home in Minnesota and spent more than one-half of the tax year here. *Luther,* 588 N.W.2d at 505. We affirmed Luther's status as a nondomiciliary resident and rejected Luther's Commerce Clause argument that Minnesota's nondomiciliary resident statute taxed her right to interstate travel. *Luther,* 588 N.W.2d at 511–12. In upholding the application of the tax to her income we recognized that it was not Luther's movement across state lines, but her worldwide net income that was being taxed because "through her substantial contacts with Minnesota, she availed herself of the many services, benefits, and protections provided to her by Minnesota." *Id.* at 511. Conduct that occurred solely in Minnesota—her presence in the state for more than one-half the year and ownership of an abode in the state—triggered Minnesota income tax liability, and application of the nondomiciliary resident statute to Luther did not implicate the Commerce Clause. *Luther,* 588 N.W.2d at 512.

The commissioner contends that *Luther* is dispositive here, and the Stelzners' income was taxed solely on the basis of their undisputed nondomiciliary resident status. As such, the level and location of the Stelzners' business activity is irrelevant, the tax does not substantially affect interstate commerce, and the Commerce Clause is not implicated. In contrast, the Stelzners argue that basing taxation on a taxpayer's status as a Minnesota resident does not shield the tax from Commerce Clause scrutiny. The Stelzners also attempt to distinguish *Luther,* arguing that they are major participants in a significant and competitive multi-state and international market, while the only interstate activity in *Luther* was interstate travel. However, even if we were to accept this distinction, the Stelzners have failed to show how this application of the nondomiciliary resident income tax operates to discriminate against or unduly burden interstate commerce.

The Stelzners contend that the tax placed on income generated outside of Minnesota implicates the Commerce Clause because it burdens their ability to continue as major participants in a competitive interstate market. While the Stelzners argue that Minnesota's taxation of their entire individual resident income is out of proportion to the actual income-generating activities occurring in Minnesota, the Stelzners have not shown anything more than an incidental impact on their cost of doing business in interstate commerce. This is not sufficient evidence of either discrimination against or an undue burden on interstate commerce to implicate the Commerce Clause. Because we hold that the Stelzners have failed to show that the Commerce Clause is implicated here, we need not reach the question of whether Minnesota's tax on the Stelzners' entire income violates the Commerce Clause.

## II.

■ Finally, the Stelzners argue that their penalties should be abated because they have shown reasonable cause for failure to file returns during the audit period. The commissioner has the discretion to abate penalty charges "if in the commissioner's opinion the failure to timely pay

the tax or failure to timely file the return is due to reasonable cause." Minn.Stat. § 270.07, subd. 1(e) (2000). The tax court affirmed the commissioner's determination of penalties and interest. In reviewing the tax court's section 270.07 reasonable cause finding, we determine whether sufficient evidence exists to support the tax court's decision. *Fridlund Sec. Co. v. Minn. Comm'r of Revenue,* 430 N.W.2d 154, 166 (Minn.1988).

The Stelzners contend their good faith belief that they were not required to file a Minnesota income tax return, combined with reliance on their tax preparer to prepare all necessary returns, constitutes reasonable cause. In support, the Stelzners cite to *United States v. Boyle,* in which the United States Supreme Court determined that "[w]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice." 469 U.S. 241, 251, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The Stelzners argue *Boyle* applies because they relied on Korpi's advice that a Minnesota return was not needed. While the Stelzners did not explicitly ask for and receive tax advice on this matter, they maintain that the "advice" took the form of Korpi's conduct—specifically, his failure to prepare a Minnesota return when he knew the Stelzners' circumstances and knew of the tax law change.

In further support of their reasonable cause argument, the Stelzners point to the Third Circuit Court of Appeals' decision in *Hatfried, Inc. v. Comm'r of Internal Revenue,* 162 F.2d 628, 631–35 (3d Cir.1947), in which the court discussed reasonable cause language for penalties arising from failure to file a particular federal tax return. In *Hatfried,* the court determined that it was reasonable for a taxpayer to rely on an accountant's advice. *Id.* at 635. In doing so, the court inferred that a misstatement on a tax return must have been "made on the accountant's advice and in reliance upon that advice" because the regular ac-

countant for the taxpayer had prepared the return knowing all the facts and circumstances. *Id.* at 632. This inference of reliance on the accountant's advice allowed the court to reach the legal conclusion that the taxpayers had shown reasonable cause. *Id* at 635.

The Stelzners urge us to likewise conclude that they reasonably relied on Korpi's "advice" in depending on him to file the necessary tax returns. However, a critical difference exists between this case and *Hatfried.* Here, the tax court found that Korpi "informed [the Stelzners] about amendments to the Minnesota income tax law modifying the definition of 'resident' for state income tax purposes." *Stelzner v. Comm'r of Revenue,* No. 7005, —— N.W.2d ——, ——, 2000 WL 37865, at *2 (Minn. T.C. Jan. 12, 2000). This factual finding defeats the Stelzners' reasonable cause argument, because, as Korpi informed the Stelzners of a relevant law change, it was not reasonable for them to disregard Korpi's statement and continue in the belief that no Minnesota return was necessary. Without reliance on their tax preparer's advice, the Stelzners cannot make a reasonable cause argument under *Boyle.*

We will not disturb the tax court's finding that Korpi informed the Stelzners of a relevant income tax law change if the record contains sufficient evidence to support the finding. *F–D Oil Co. v. Comm'r of Revenue,* 560 N.W.2d 701, 704 (Minn. 1997). Donald Stelzner was asked at trial whether there was "any further discussion of law changes in Minnesota, in or about 1987, relating to the legal definition of Minnesota residency." In response, Donald Stelzner acknowledged that Korpi had mentioned a Minnesota law change that the two needed to discuss. Having heard Donald Stelzner's testimony, the tax court found that Korpi informed the Stelzners in general terms of a modification to the term "resident" in the state income tax law. *Stelzner,* —— N.W.2d ——, ——, 2000 WL 37865, at *2. The Stelzners advance a dif-

ferent interpretation of the testimony, arguing that Donald Stelzner's response was seasoned by the audit and years of appeals on the matter, and only indicates that Donald Stelzner was aware that some law had been changed. However, "[t]he tax court is in the best position to assess the credibility and sincerity of witnesses." *F–D Oil Co.*, 560 N.W.2d at 706. Accepting this factual finding, there is sufficient evidence in the record to support the tax court's determination that the Stelzners cannot show reasonable cause for their failure to file Minnesota state income tax returns during the audit period; therefore, penalty abatement is not warranted.

The Stelzners have failed to demonstrate that Minnesota's taxation of their entire nondomiciliary resident income earned primarily from their multi-state and international business operation implicates the Commerce Clause; therefore, we affirm the decision of the tax court. Furthermore, there is sufficient evidence in the record to support the tax court's determination that the Stelzners have not shown reasonable cause for penalty abatement and to affirm the commissioner's assessment of penalties and interest.

Affirmed.