R. Austin CHAPMAN and Nadine
Chapman, Relators,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. C5–02–245.

Supreme Court of Minnesota.

Aug. 29, 2002.

Rehearing Denied Oct. 14, 2002.

Mike Hatch, Attorney General, Barry R. Greller, Assistant Attorney General, St. Paul, MN, for Relator's.

Sue Ann Nelson, Gary Hanson, Martin A. Culhane III, Robert J. Stewart, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

Individual taxpayers subject to the Minnesota alternative minimum tax (AMT) are permitted a charitable contribution deduction if the contribution is made "to or for the use of" a charitable organization "located in and carrying on substantially all of its activities in the [State of Minnesota]." Minn.Stat. §§ 290.091, subd. 2(f), and 290.21, subd. 3(b) (1994). In this case, we are asked to determine whether relators' contributions to a Massachusetts donor-advised charitable gift fund qualified for deduction under Minnesota's AMT provisions and, if not, whether Minnesota's AMT provisions violate the Commerce Clause and Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Minnesota Constitution. The Minnesota Tax Court determined that relators' contributions did not qualify for deduction because they were neither made to qualifying Minnesota charities nor made in trust for qualifying Minnesota charities. The tax court also determined that Minnesota's AMT provisions allowing a deduction for contributions to Minnesota charities but not for contributions to non-Minnesota charities do not violate the Commerce Clause, the Equal Protection Clause, or the Uniformity Clause. We affirm in part and reverse in part.

In 1992, R. Austin Chapman and Nadine Chapman, relators, established a donor-advised fund account with the Fidelity Investments Charitable Gift Fund in Boston, Massachusetts. In 1994, 1995, and 1996, the Chapmans made contributions to this fund. In computing their Minnesota AMT[1] liabilities for each of these three years, the Chapmans deducted the amount of their contribution to the fund for that year.

■ The respondent Commissioner of Revenue subsequently disallowed these deductions on the grounds that the Fidelity fund was not located in Minnesota and did not carry on substantially all of its activity in Minnesota. The Commissioner assessed additional tax liability and interest against the Chapmans for the relevant tax years of $145,006.34. After the Commissioner's decision was upheld on administrative appeal, the Chapmans challenged the decision in the Minnesota Tax Court. The Chapmans argued that their contributions to the Fidelity fund were made "for the use of" Minnesota charities within the meaning of Minn.Stat. §§ 290.091, subd. 2(f) and 290.21, subd. 3(b). They also argued that restriction of the Minnesota AMT charitable deduction to Minnesota charities violates the Commerce Clause and the Equal Protection Clause of the U.S. Constitution and violates the Uniformity Clause of the Minnesota Constitution.[2] The Chapmans sought reversal of

---

1. The federal alternative minimum tax was enacted to reduce the opportunity for individuals with high income to achieve minimal income tax liability through use of exclusions, deductions and credits provided in federal tax law. *See* Michael D. Rose and John C. Chommie, *Federal Income Taxation* § 3.38 (3d ed.1988). The Minnesota alternative minimum tax appears intended to serve the same purpose, as it is patterned on, though not identical to, the federal law.

2. The tax court does not have original jurisdiction to decide constitutional issues. *Erie Mining Co. v. Comm'r of Revenue*, 343 N.W.2d 261, 264 (Minn.1984). The tax court acquires jurisdiction to decide all issues in a particular

the additional taxes and interest assessed by the Commissioner.

The parties then stipulated to the facts and sought summary judgment from the tax court. The parties stipulated that (1) the Fidelity Charitable Gift Fund is a trust formed in Massachusetts and a public charity under the Internal Revenue Code of 1986, (2) contributions made to this fund from 1994 through 1996 were deductible under the Code and under Minn.Stat. § 290.01, subd. 19 (2000), (3) Fidelity's principal office is in Massachusetts, (4) the Chapmans contributed $313,200 to the fund in 1994, $462,100 to the fund in 1995, and $838,000 to the fund in 1996, (5) no distributions from the fund were made to any charity from 1994 through 1996, (6) from 1997 through 2000, distributions from the fund were made to various charitable organizations and foundations by Fidelity as designated by the Chapmans, (7) Fidelity complied with every distribution request or grant recommendation made by the Chapmans, (8) in 1997, all but $20,000 of the $377,500 distributed by Fidelity went to charitable organizations and foundations located in Minnesota, (9) from 1998 through 2000, all of the funds distributed by Fidelity went to charitable organizations and foundations located in Minnesota, and (10) in calculating their Minnesota AMT liability for the tax years 1994 through 1996, the Chapmans reported contributions made to Fidelity in each of the years as qualified "Minnesota charitable contribution deductions" under Minn.Stat. § 290.091, subd. 2(f).

The tax court denied the Chapmans' motion for summary judgment and granted the Commissioner summary judgment. The court explained that under Minnesota's AMT provisions, individual taxpayers are permitted a charitable contribution deduction if the contribution is made "to or for the use of" qualifying charitable organizations. Drawing on federal tax cases, the court concluded that the term "for the use of" under the Minnesota AMT provisions means "irrevocably in trust for." Because the Chapmans did not make charitable contributions "irrevocably in trust for" Minnesota charitable organizations, they did not qualify for the AMT deduction.

The tax court also held that Minnesota's AMT charitable contribution provisions do not violate the U.S. and Minnesota Constitutions. The court explained that the provisions implicate the Commerce Clause because donations to donor-advised conduit funds constitute economic activity in the stream of commerce. However, the court decided that the limited scope of the charitable contribution deduction does not violate the Commerce Clause because the denial does not discriminate against interstate commerce. More specifically, the court reasoned that the statute allows a deduction for contributions to conduit funds located both in Minnesota and outside Minnesota so long as the contributions made to the conduit funds are made "for the use of" Minnesota charities. Finally, the court determined that Minnesota's AMT charitable contribution provisions do not violate the Equal Protection Clause or the Uniformity Clause because those AMT provisions do not discriminate against the

case, including constitutional issues, when the district court transfers the case to the tax court. *In re McCannel,* 301 N.W.2d 910, 919–20 (Minn.1980). In order to insure that the tax court would have jurisdiction to decide the constitutional issues, the Chapmans and the Commissioner filed a joint motion to refer

the constitutional issues to the district court and to transfer those issues back to the tax court. The tax court issued an order of referral and a stay of proceedings and the district court issued an order transferring the case back to the tax court.

use of conduit funds located outside Minnesota.

Following the tax court decision, the Chapmans filed a petition for writ of certiorari asking our court to evaluate whether the tax court erred in interpreting Minnesota's AMT statutory scheme and whether the AMT statutory scheme violates the U.S. Constitution or the Minnesota Constitution.

## I.

■■■ Our review of tax court decisions is limited to determining whether the tax court lacked jurisdiction, whether the tax court's decision is supported by the evidence and is in conformity with the law, and whether the tax court committed any other error of law. *Skyline Preservation Found. v. County of Polk*, 621 N.W.2d 727, 731 (Minn.2001); Minn.Stat. § 271.10, subd. 1 (2000). We review an order granting summary judgment to determine whether there are any genuine issues of material fact and whether the lower court erred in applying the law. *Burlington N.R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 57 (Minn.2000). Because the parties stipulated to the facts underlying this dispute, we need only consider whether the applicable law was properly applied. We review de novo the tax court's conclusions of law, including the interpretation of statutes. *Id.* Because states have wide latitude in establishing their taxation schemes, and because statutes are declared unconstitutional only when absolutely necessary, a taxpayer challenging the constitutionality of a state tax statute bears a heavy burden. *Stelzner v. Comm'r of Revenue*, 621

N.W.2d 736, 740 (Minn.2001). We will uphold a statute unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt. *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 496 (Minn. 1997).

The first question before us is whether the tax court properly construed the challenged provisions to find that the charitable contribution deduction for the AMT must be made to or in trust for Minnesota charitable organizations. To address this question, it is necessary to examine the Minnesota AMT statutory scheme.

The computation of an individual taxpayer's Minnesota AMT liability begins with calculation of the taxpayer's Minnesota alternative minimum taxable income (AMTI). Minn.Stat. § 290.091, subd. 1(a) (2000). The Minnesota AMTI is determined by making various adjustments required by Minn.Stat. § 290.091, subd. 2(a), to the taxpayer's federal AMTI. These adjustments include an "add-back" of itemized deductions permitted for federal AMTI purposes, meaning that the amounts of those deductions remain taxable income for Minnesota AMT purposes. Minn.Stat. § 290.091, subd. 2(a).[3] The statute includes two exceptions to this disallowance of federal itemized deductions—one for the "Minnesota charitable contribution deduction" and the other for the medical expense deduction. Minn.Stat. § 290.091, subd. 2(a)(2). This statutory structure results in the disallowance of deductions for all charitable contributions in computing the Minnesota AMTI except the "Minnesota charitable contribution de-

---

**3.** For the tax years at issue, the statute provided, in relevant part:

(a) "Alternative minimum taxable income" means the sum of the following for the taxable year:

(1) the taxpayer's federal alternative minimum taxable income * * *;

(2) the taxpayer's itemized deductions allowed in computing the federal alternative minimum taxable income, but excluding the Minnesota charitable contribution deduction and the medical expense deduction;

* * * *.

Minn.Stat. § 290.091, subd. 2(a) (1994).

duction." It is that differential treatment that is at issue here.

The "Minnesota charitable contribution deduction" is defined for purposes of the Minnesota AMT as "a charitable contribution deduction under section 170 of the Internal Revenue Code to or *for the use of* an entity described in section 290.21, subdivision 3, clauses (a) to (e)." Minn.Stat. § 290.091, subd. 2(f). Section 290.21, subdivision 3 sets forth, as relevant here, certain allowable deductions for contributions or gifts made in the taxable year, including amounts contributed within the taxable year:

> (b) to or for the use of any community chest, corporation, organization, trust, fund, association, or foundation *located in and carrying on substantially all of its activities within this state,* organized and operating exclusively for religious, charitable, public cemetery, scientific, literary, artistic, or educational purposes, or for the prevention of cruelty to children or animals no part of the net earnings of which inures to the benefit of any private stockholder or individual.

Minn.Stat. § 290.21, subd. 3(b) (emphasis added).

Based on the above provisions, charitable contributions are deductible for purposes of the Minnesota AMT only if made "to or *for the use of*" a Minnesota charitable organization or foundation. In contrast to contributions "to" a charitable organization, contributions "for the use of" logically refers to the forms other than direct contributions. Minnesota's AMT provisions do not define the term "for the use of," and we have not interpreted this

term. Therefore, its meaning must be determined through statutory construction.

■ "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2000). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* In construing the meaning and scope of a statute, the words of the statute govern and are given their common and approved usage. *Northern States Power Co. v. Comm'r of Revenue,* 571 N.W.2d 573, 575 (Minn.1997). In ascertaining the intent of the legislature, we are guided by the presumption that the legislature does not intend to violate the U.S. Constitution and that the legislature does not intend a result that is absurd, impossible to execute, or unreasonable. Minn.Stat. § 645.17 (2000).

Although we have not had the opportunity to interpret the phrase "for the use of," federal courts have construed this term in the context of charitable contribution deductions under federal tax statutes.[4] These courts have addressed the forms that charitable contributions may take to qualify for a deduction and have uniformly concluded that the term "for the use of" means "in trust for." In *Davis v. United States,* 495 U.S. 472, 479–84, 110 S.Ct. 2014, 109 L.Ed.2d 457 (1990), the U.S. Supreme Court held that the transfer of funds did not qualify as a charitable contribution made "for the use of" a charitable organization within the meaning of 26 U.S.C. § 170 (1982) in the absence of evidence that the funds were transferred "in

---

4. Because the Minnesota AMT provisions refer specifically to certain federal tax provisions and because the Minnesota AMT provisions are based on federal income tax law, we may refer to federal law for guidance in interpreting the term "for the use of." *See Steele County Bldg. & Loan Ass'n v. Comm'r of Taxation,* 263 Minn. 176, 116 N.W.2d 506, 511 (1962).

trust for" the charitable organization. The Court concluded that this interpretation of the term "for the use of" was consistent with congressional intent and the purpose of the statute as a whole, which was to provide tax benefits to charitable organizations. *Davis*, 495 U.S. at 483–84, 110 S.Ct. 2014. The Court reasoned that requiring contributions to be made in trust or in some similar legal arrangement would foster charitable giving because the beneficiary would have the legal power and incentive to insure that donated funds were used for the designated charitable purposes. *Id.* Before the Supreme Court decision in *Davis*, several lower federal courts had similarly construed "for the use of" to mean "in trust for." *See Orr v. United States*, 343 F.2d 553 (5th Cir.1965); *Rockefeller v. Comm'r of Internal Revenue*, 76 T.C. 178, 1981 WL 11372 (1981); *Appleby v. C.I.R.*, 48 T.C. 330, 1967 WL 944 (1967); *O'Brien v. C.I.R.*, 46 T.C. 583, 1966 WL 1188 (1966).

■ The federal courts' longstanding construction that the term "for the use of" means "in trust for" in the context of charitable contribution deductions is persuasive in interpreting our own AMT provisions. In addition, the more flexible meaning of "for the use of" that the Chapmans advocate would, as the tax court explained, create significant administrative burdens for the Commissioner in enforcing the statute. For example, the Chapmans did not designate a beneficiary at the time they made their contributions to the Fidelity fund in 1994 through 1996, and none of those contributions were distributed until at least 1997. The practical difficulties in auditing and enforcing a "for the use of" requirement against undirected contributions that may in the future be used for Minnesota charities are obvious and not likely intended by the legislature. For these reasons, we conclude that the tax court properly construed the term "for the use of" to mean "in trust for." Because the Chapmans did not make their charitable contributions "to" or "in trust for" Minnesota charitable organizations, we affirm the tax court's ruling that the Chapmans' contributions fail to qualify for the Minnesota AMT deduction.

II.

Because the Chapman's contributions do not qualify for the AMT deduction, we must address their argument that the statute so construed is unconstitutional. We first address their challenge under the Commerce Clause.

The Commerce Clause provides that "[t]he Congress shall have the Power * * * to regulate Commerce with foreign Nations and among the several states." U.S. Const. art. I, § 8, cl. 3. Although the Commerce Clause represents an affirmative grant of power to Congress, it has long been held to impliedly contain a negative command, commonly referred to as the "dormant" Commerce Clause, that the states may not discriminate against or unduly burden interstate commerce. *Quill Corp. v. North Dakota*, 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

■ Commerce Clause challenges involve a two-step inquiry. *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740 (Minn.2001). We first determine whether the challenged statute implicates the Commerce Clause and, if it does, then evaluate whether the statute violates the Commerce Clause. *Id.*

■ "It is well settled that actions are within the domain of the Commerce Clause if they burden interstate commerce or impede its free flow." *C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 389, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). There are three broad categories of activity that fall

under the purview of the Commerce Clause: (1) the use of the channels of interstate commerce, (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, and (3) activities having a substantial effect on interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Thus, to show that Minnesota's AMT ·charitable contribution provisions implicate the Commerce Clause, the Chapmans must demonstrate that those provisions concern (1) the use of the channels of interstate commerce, (2) the instrumentalities of interstate commerce, or the persons or things in interstate commerce, or (3) activities having a substantial effect on an interstate activity or market. *See United States v. Faasse*, 265 F.3d 475 (6th Cir.2001) (discussing whether a challenged law regulates the use of the channels of interstate commerce or things in interstate commerce); *Luther v. Comm'r of Revenue*, 588 N.W.2d 502, 510 (Minn. 1999) (discussing whether a challenged tax has a substantial effect on interstate commerce).

 Here, Minnesota's AMT provisions establish a charitable deduction for contributions "to or for the use of" any charitable organization "located in and carrying on substantially all of its activities within this state." Minn.Stat. § 290.21, subd. 3(b). Payments are things in interstate commerce and payments to parties across state· lines require the· use of the channels of interstate commerce. *Faasse*, 265 F.3d at 489–90. The activities of nonprofit charitable organizations fall within the protection of the dormant Commerce Clause. *Camps Newfound Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 586, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997). Thus, paying and making donations to charitable organizations across state lines concern things in interstate commerce and the channels of interstate commerce. In addition, the AMT charitable contribution provisions substantially affect interstate commerce because the nonprofit organizations they support constitute a substantial sector of the economy and interstate commerce. *Id.* For these reasons,· we conclude that Minnesota's AMT charitable contribution· provisions implicate the Commerce Clause.

 The Commissioner contends that the AMT charitable contribution provisions do not implicate. the Commerce Clause because (1) they apply to a relatively small number of taxpayers and (2) the deduction directly implicates only the personal tax liability of individuals residing in Minnesota or otherwise subject to the Minnesota tax and does not have a direct impact on any interstate business or market. However, the Commissioner's first argument fails because for purposes of a discrimination claim under the Commerce Clause the magnitude and scope of the discrimination against interstate commerce have no bearing on the question of whether the Commerce Clause has been violated. *See Camps Newfound*, 520 U.S. at 581 n. 15, 117 S.Ct. 1590. In other words, there is no· de minimis defense to this type of Commerce Clause challenge. *Id.* The Commissioner's second argument is also unavailing. Although it is true that the Commerce Clause protects markets and participants in markets rather than taxpayers as such, *General Motors Corp. v. Tracy*, 519 U.S. 278, 300, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997), a state regulation imposed on individual taxpayers that does not directly tax a commercial activity or organization can implicate the Commerce Clause. *Id.* at 580, 117 S:Ct. 1590. Accordingly, we are not persuaded by the Commissioner's arguments that the AMT provisions do not implicate the Commerce Clause.

■ Because the AMT provisions implicate the Commerce Clause, we must next determine whether these provisions violate the Commerce Clause. In *Complete Auto Transit v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the U.S. Supreme Court adopted a four-part test to determine whether a state's tax system violates the Commerce Clause. To withstand constitutional scrutiny, a state tax must (1) be applied to an activity with a substantial nexus with the taxing state, (2) be fairly apportioned, (3) not discriminate against interstate commerce, and (4) be fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 279, 97 S.Ct. 1076. If any of these criteria are not met, the statute violates the Commerce Clause. *Id.*

■ The Chapmans focus on the third prong of the *Complete Auto* test and contend that Minnesota's AMT charitable contribution provisions discriminate against interstate commerce. The dormant Commerce Clause invalidates state measures that "unjustifiably * * * discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). The term "discrimination" in the dormant Commerce Clause context means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345. Statutes that are facially discriminatory are "virtually *per se* invalid." *Id.* However, a state may defend the law "under the per se rule by demonstrating that it 'advances a legitimate local purpose

that cannot be adequately served by reasonable nondiscriminatory alternatives.' " *Camps Newfound*, 520 U.S. at 581, 117 S.Ct. 1590 (citations omitted). "This is an extremely difficult burden, 'so heavy that facial discrimination by itself may be a fatal defect.' " *Id.* at 582, 117 S.Ct. 1590 (citations omitted). "Once a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry." *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992).

■ Here, the challenged AMT provisions allow a deduction for contributions "to or for the use of" any charitable organization "located in and carrying on substantially all of its activities within this state," Minn.Stat. § 290.21, subd. 3(b), but no deduction is allowed for charitable contributions to non-Minnesota charities. Minn.Stat. § 290.091, subd. 2. On its face, the statute treats contributions to in-state charitable organizations differently from contributions to out-of-state charitable organizations. The activities of nonprofit charitable organizations fall within the protection of the dormant Commerce Clause. *Camps Newfound*, 520 U.S. at 586, 117 S.Ct. 1590. Because this statute is facially discriminatory, it is per se invalid unless the state demonstrates that the statute " 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.' " *Oregon Waste*, 511 U.S. at 101, 114 S.Ct. 1345 (citations omitted).[5] Because the Commissioner has not defended Minnesota's AMT charitable contribution provisions under the per se rule, we decline to address the

**5.** The Supreme Court has found per se invalidity was overcome on this basis in only one case. *See Maine v. Taylor*, 477 U.S. 131, 141, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). In that case, the Court found that the state had

no reasonable nondiscriminatory alternatives to the action it had taken. *Oregon Waste*, 511 U.S. at 101, 114 S.Ct. 1345 (discussing the holding in *Maine v. Taylor*).

question of whether there is a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Camps Newfound*, 520 U.S. at 582–83 n. 16, 117 S.Ct. 1590 (stating that a court should not address a possible defense under the per se rule if not raised by the state).

The Commissioner argues that despite its facial discrimination, the AMT charitable contribution provisions do not violate the Commerce Clause because their purpose is to provide AMT taxpayers with an incentive to contribute to charities that assist the state in discharging some of its core public functions. According to the Commissioner, the Commerce Clause is not offended when a state statute directly assists the state in fulfilling its core function of ensuring the health and welfare of its citizens, rather than implementing some form of economic protectionism. However, the Supreme Court rejected this very argument in *Camps Newfound*. In that case, the town argued that because the challenged exemption statute was designed to lessen the state's social services burden and to foster the societal benefits provided by charitable organizations, it should be treated the same as an expenditure of government funds for the same purposes. 520 U.S. at 588–89, 117 S.Ct. 1590. The Court explained that even assuming that a direct subsidy benefiting only those nonprofits serving principally Maine residents would be permissible, "our cases do not sanction a tax exemption serving similar ends." *Id.* at 589, 117 S.Ct. 1590. Accordingly, the Commissioner's argument that the AMT provisions encourage contributions to nonprofit institutions that may "relieve the state of some of its welfare burden" does not save the charitable contribution provisions from constitutional infirmity under the Commerce Clause.

Because the AMT charitable contribution provisions facially discriminate against interstate commerce by allowing a deduction for contributions to only Minnesota charities, the statute violates the Commerce Clause. Inasmuch as we conclude that the AMT charitable contribution provisions violate the Commerce Clause, we need not determine whether they violate the Equal Protection Clause of the U.S. Constitution or the Uniformity Clause of the Minnesota Constitution.

### III.

Having concluded that Minnesota's AMT charitable contribution provisions unconstitutionally discriminate against interstate commerce, we must determine the consequences for the statutory scheme. Specifically, the question is whether the exclusion from the charitable deduction add-back for Minnesota contributions should be severed, resulting in no deductions for charitable contributions in calculating the AMTI, or whether other language can be severed such that deductions for contributions to all charitable organizations are authorized, regardless of whether the charity is located in Minnesota or elsewhere. The Chapmans ask us to choose the latter course. The Commissioner urges us to remand the case to the tax court to determine how severance ought to be crafted to comport with legislative intent.

The legislature has provided guidance on how a ruling of partial invalidity of a statute should be implemented. Minn. Stat. § 645.20 (2000). Section 645.20 establishes a general rule of severability, under which a court must sever any unconstitutional provisions from a statute and leave the remaining provisions intact, unless the legislature has specified that the statute's provisions are not severable or it is apparent that the legislature would not

have enacted the remaining provisions without those that are to be severed. Section 645.20 provides:

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

*Id.*

When a court determines that a statute is unconstitutional, it must invalidate as much of the statute as is necessary to eliminate the unconstitutionality. *Archer Daniels Midland Co. v. State*, 315 N.W.2d 597, 600 (Minn.1982). We look first to the intent of the legislature to fashion a remedy consistent with that intent. *Id.* While we can strike a severable statutory provision if found to be unconstitutional and void, "we cannot add language to a statute in order to render it constitutionally permissible." *McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 614 (Minn.1984); *Thompson v. Estate of Petroff*, 319 N.W.2d 400, 407 (Minn.1982).

Because the 1994 AMT statute does not provide that its provisions are not severable, we apply the principles of section 645.20 to the statute. Under section 290.091, the Minnesota alternative minimum taxable income is defined as the sum of several items for the taxable year, including:

[t]he taxpayer's itemized deductions allowed in computing federal alternative minimum taxable income, but excluding the Minnesota charitable contribution deduction and the medical expense deduction.

Minn.Stat. § 290.091, subd. 2(a)(2) (1994). In practical terms, the unconstitutional discrimination of allowing a deduction for Minnesota charitable contributions but not for others can be cured either by making all charitable contributions deductible or by making none deductible. The Chapmans seek a curative interpretation of the AMT charitable contribution provisions that would permit them to deduct contributions to charitable organizations regardless of whether the charity is located in Minnesota. However, the Chapmans do not explain how the governing severance principles can achieve such a result. Nor do they identify particular offending language that could be severed from the statute to eliminate the add-back of all charitable deductions.

We conclude that the result sought by the Chapmans is not possible under our severance rules given the manner in which the statute is written. The statute establishes the general rule that the taxpayer's itemized deductions allowed in computing their federal AMTI must be added back in calculating their Minnesota AMTI. The statute creates an exception to this general rule, however, by excluding the Minnesota charitable contribution deduction from the add-back of itemized deductions. It is this exclusion of only the Minnesota charitable contribution deduction that offends the Commerce Clause. Because this exception to the general rule is the source of the constitutional infirmity of the statute, the language establishing the exception is the language that must be severed. Accordingly, to eliminate the source of the constitutional problem with the AMT provisions,

we sever the language "the Minnesota charitable contribution deduction" from section 290.091, subd. 2(a)(2). The result is that under the statute, the Minnesota AMTI consists of, among other things, the itemized deductions allowed in computing the federal AMTI, including deductions for contributions to Minnesota charities and non-Minnesota charities as well.

The Chapmans argue that severance principles should be used to eliminate the unconstitutional discrimination by instead allowing all charitable contributions. They claim this result is necessary to preserve the legislature's intent to allow a deduction for contributions to Minnesota charities. Obviously, in enacting the AMT charitable contribution provisions the legislature did intend to allow a deduction for contributions to Minnesota charities. But just as obviously, the legislature intended not to allow a deduction for contributions to non-Minnesota charities and to include charitable contributions to non-Minnesota charities in calculating Minnesota AMT. That intent is expressed in the general rule of adding back federal itemized deductions, with limited specified exceptions. However, as we have concluded both aspects of the legislature's intent cannot be effectuated without violating the Commerce Clause, and therefore we must determine, using severance principles set out by the legislature, which option the legislature would have chosen if it had known it could not do both.

The evolution of the AMT charitable contribution provisions provides some insight that is helpful in making this determination. That evolution reveals that the legislature has never allowed deductions from the AMT for *all* charitable contributions, yet it has in the past disallowed deductions for contributions to Minnesota charities. Although the 1994 version of subdivision 2(a)(2) provides that the

Minnesota charitable contribution deduction is excluded in computing the AMTI, this was not always the case. In 1986, no charitable contribution deduction could be excluded in computing the AMTI. Minn. Stat. § 290.091 (1986). In 1987, the legislature altered the definition of the AMTI to include an exclusion for "the portion of the charitable contribution deduction that constitutes an item of tax preference under section 57(a)(6) of the Internal Revenue Code." *See* Minn.Stat. § 290.091, subd. 2 (Supp.1987). Section 57(a)(6) provided for an appreciated property charitable deduction, defined as "[t]he amount by which the deduction allowable under section 170 or 642(c) would be reduced if all capital gain property were taken into account at its adjusted basis." 26 U.S.C. § 57(a)(6) (1987). Although this amendment allowed a deduction from the AMTI for some charitable contributions, it was limited to the narrow category of appreciated property contributions.

In 1990, the AMT statute was amended to provide that in computing the AMTI the taxpayer could exclude from the add-back the "Minnesota charitable contribution deduction." *See* Minn.Stat. § 290.091, subd. 2 (1990). The 1990 amendment also defined the Minnesota charitable contribution deduction as "a charitable contribution deduction under section 170 of the Internal Revenue Code to or for the use of an entity described in section 290.021, subdivision 3, clauses (a) to (e)." *Id.* The following year the legislature amended section 290.091, subdivision 2 again, providing that in computing the AMTI, there was an exclusion from the add-back for the "Minnesota charitable contribution deduction and non-Minnesota charitable deductions to the extent they are included in federal alternative minimum taxable income under section 57(a)(6) of the Internal Revenue Code." *See* Minn.Stat. § 290.091, subd. 2 (Supp.1991). The effect of this amend-

ment was to reinstate the deduction for appreciated property charitable contributions that was the subject of the 1987 amendment, particularly as applicable to non-Minnesota contributions. In 1994, the legislature again amended section 290.091, subd. 2, to provide an exclusion from the add-back for the "Minnesota charitable contribution deduction" in computing the AMTI. Minn.Stat. § 290.091, subd. 2 (1994). This version of the Minnesota charitable contribution add-back exclusion eliminated the favorable treatment for non-Minnesota contributions of appreciated property that had been reinstated in 1991.

This history of Minnesota's AMT charitable contribution provisions illustrates that while the legislature has vacillated in its treatment of contributions to charities in calculating the AMTI, it has never permitted an exclusion from the add-back for *all* charitable contribution deductions, as the Chapmans advocate. Significantly, when previous versions of the AMT law did provide an exclusion from the add-back for contributions to non-Minnesota charities, that exclusion was limited to the appreciated property charitable deduction as defined by section 57(a)(6) of the Internal Revenue Code. Moreover, in 1994 the legislature deleted even that limited exclusion for non-Minnesota charitable contribution deductions. Thus, the legislature's treatment of charitable deductions in the AMT law over the years demonstrates more consistently its intent to disallow deductions for contributions to non-Minnesota charities than its intent to allow deductions for Minnesota charities. There is no suggestion in its current or past treatment of charitable contributions under the AMT that the legislature would choose to allow

deductions for *all* charitable contributions. On the other hand, the alternative of disallowing all charitable contributions for AMT purposes was the law in 1986.

Therefore, we cannot discern from this legislative history any indication that the legislature would choose to allow deductions for all charitable contributions if its preference for a deduction only for Minnesota contributions were invalid. Therefore, the intent of the legislature would be frustrated even if the unconstitutional language of the AMT provisions could be severed to provide an exclusion from the add-back for all charitable contribution deductions. We therefore conclude that under the principles of section 645.20, the language of section 290.091, subd. 2(a) that excludes "the Minnesota charitable contribution deduction" must be severed from the remaining valid provisions. The result is that deductions for all charitable contributions are among the itemized deductions that must be added back in computing the Minnesota AMTI; that is, there is no deduction for any charitable contributions for Minnesota AMTI purposes.[6]

## IV.

Although we have concluded that the unconstitutionality of the AMT charitable contribution provisions will be cured by severing the language that provides favorable treatment for contributions to Minnesota charities, the question remains whether this curative interpretation of the statute should be applied prospectively only, or whether it can be applied retroactively to defeat the Chapman's claim that the Commissioner's assessment of additional tax liability for tax years 1994–1996 should be vacated. The Chapmans argue that having established the invalidity of

---

**6.** This prospective interpretation of the statute is, of course, subject to legislative modification, consistent with the limitations of the

dormant Commerce Clause and other relevant constitutional provisions.

the Minnesota-only charitable contribution deduction, they are entitled to "meaningful backward-looking relief" under *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), that would allow them to exclude from the add-back what the courts have determined to be their non-Minnesota charitable contribution deduction. The Chapmans contend, without further explanation, that this "is the, only remedy that preserves legislative intent, * * * is fair and administratively feasible, and adopts the same rules as applicable for regular tax purposes." The Commissioner contends, also without explanation, that the Chapmans are not entitled to meaningful backward-looking relief under *McKesson*.

In *McKesson*, the Supreme Court addressed whether Florida could, consistent with due process, provide only prospective relief where a taxpayer had paid liquor taxes under a law held to violate the Commerce Clause by discriminating in favor of Florida products. The Court held that the "State [must] provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson*, 496 U.S. at 31, 110 S.Ct. 2238. The Court explained that the Due Process Clause of the Fourteenth Amendment required that the state provide a backwards-looking remedy whereby those who had paid the tax were put in the same position as those who had

been favored by the unlawful exemption. *Id.* at 43, 110 S.Ct. 2238. We similarly conclude that due process requires the Commissioner to provide meaningful backward-looking relief to the Chapmans.[7]

The question remains what shape that relief must take. In *McKesson* the requirement of backward-looking relief did not necessarily mandate a refund of taxes paid. Rather, the Court held that there were three types of backward-looking remedies that a state could employ to rectify the unconstitutional discrimination. *Id.* at 40–41, 110 S.Ct. 2238. First, it could refund the difference between the tax paid by the victim of the discrimination and the tax that would have been assessed had the taxpayer been granted the unlawful exemption. *Id.* Second, to the extent consistent with other constitutional restrictions and state law, it could assess and collect taxes from those favored by the unlawful discrimination to put them on equal footing with those who had been discriminated against. *Id.* Third, it could apply a combination of a partial refund and a partial retroactive assessment. *Id.* These three options were available because the tax law was not invalid per se, but only because it discriminated against interstate commerce. Therefore, the Due Process Clause demanded only a remedy that insured that "the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against inter-

---

**7.** In its discussion of due process requirements in *McKesson*, the Court indicated that the issue of meaningful backward-looking relief might not be present if the taxpayer had a genuine opportunity for predeprivation relief. *Id.* at 38–39, 110 S.Ct. 2238. *See also Cambridge State Bank v. James*, 514 N.W.2d 565, 569–71 (Minn.1994) (holding refund of discriminatory tax required because predeprivation remedy not clearly available for tax years at issue). The Chapmans not only had, but availed themselves of, a predeprivation opportunity to challenge the AMT law without pay-

ing the challenged taxes. Therefore, the issue here is not whether the Chapmans are entitled to a refund, but whether the additional tax liability assessed by the Commissioner remains valid. We find no authority and discern no principle under which this difference in circumstances from *McKesson* and *Cambridge State Bank* lessens the state's obligation to provide a meaningful remedy to the Chapmans that eliminates the unlawful discrimination against interstate commerce for the contested tax period.

state commerce." *McKesson*, 496 U.S. at 41, 110 S.Ct. 2238; *see also Fulton Corp. v. Faulkner*, 516 U.S. 325, 346–47, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996).

In *McKesson* and subsequent cases presenting similar remedy issues, the Supreme Court has not dictated a remedy from among the *McKesson* alternatives, but has instead remanded to the state courts to determine the appropriate remedy. *E.g., McKesson*, 496 U.S. at 51, 110 S.Ct. 2238; *Fulton Corp.*, 516 U.S. at 347, 116 S.Ct. 848. Some state courts confronted with cases in which the *McKesson* remedial alternatives are available have left the selection of a remedy from among those alternatives to the taxing authority. *See, e.g., PPG Industries, Inc. v. Com., Bd. of Fin. and Revenue*, 567 Pa. 580, 790 A.2d 261, 270 (2001) (explaining *McKesson* alternatives and directing Commonwealth to provide a retrospective remedy consistent with opinion); *Fulton Corp. v. Faulkner*, 345 N.C. 419, 481 S.E.2d 8, 11 (1997) (holding that state legislature should determine whether to cure discriminatory tax by enforcing tax as to all or forgiving tax in its entirety); *Matter of Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 868 P.2d 419, 426–27 (1994) (holding that Director of Taxation may select remedial option). Other courts have held that the refund option must be implemented because retroactive taxation is not a viable alternative. *See Ceridian Corp. v. Franchise Tax Bd.*, 85 Cal.App.4th 875, 102 Cal.Rptr.2d 611, 621 (2000) (requiring refund because state statute of limitation on tax assessment bars retroactive tax collection alternative); *Scottsdale Princess Partnership v. Dept. of Revenue*, 191 Ariz. 499, 958 P.2d 15, 21 (App.1997) (rejecting retroactive taxation option because of due process concerns

and unwillingness of taxing authority to use it).

In this case, the tax court had no occasion to address the remedy issue because it held the AMT charitable contribution provisions do not violate the Commerce Clause. As noted, the Chapmans argue that the meaningful backward-looking relief to which they are entitled should be allowance of a deduction for their non-Minnesota contributions, but this position appears to be premised primarily on their severance argument. They offer no significant assessment of the *McKesson* alternatives. The Commissioner does not address the *McKesson* alternatives, arguing instead that remedy issues are not ripe without a remand for the tax court to assess the severance issue.

We have resolved the severance issue and with it the issue of prospective application of the AMT charitable contribution provisions. We have also determined that meaningful backward-looking relief must be provided to the Chapmans. In the absence of adequate briefing by the parties, we decline to direct which of the *McKesson* options must be employed to achieve that relief.

Remand to the tax court will allow the parties to address this issue of which *McKesson* alternative should be retrospective remedy here.[8] Nonetheless, we note our concern regarding the option of retroactive imposition of tax liability in the circumstances of this case. While the Court in *McKesson* listed retroactive taxation of the taxpayers previously advantaged by the discriminatory tax as one of the possible options to cure the Commerce Clause violation, it pointed out that due process does impose some limitation on the avail-

---

**8.** Contrary to the implication by the dissent, our severance determination concerning the prospective application of the statute does not limit the available options for backward-looking relief.

ability of that option. *Id.* at 40 n. 23, 110 S.Ct. 2238 (noting that "the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be 'so harsh and oppressive as to transgress the constitutional limitation' "); *see United States v. Carlton,* 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (explaining due process standard applicable to retroactive taxation). The availability of the retroactive taxation remedy may also be limited by state law, such as the statute of limitations on assessment of back taxes. *See Ceridian Corp.,* 102 Cal.Rptr.2d at 621 (requiring refund because state statute of limitation on tax assessment bars retroactive tax collection alternative).

Advised by the parties, the tax court can fully assess the effect of these or any other limitations on the application of the *McKesson* remedial options to the Chapman's claim. We remand to the tax court to determine which of the *McKesson* alternatives is the proper remedy in the circumstances of this case.

Affirmed in part, reversed in part and remanded.

GILBERT, J., took no part in the consideration or decision of this case.

MEYER, J., not having been a member of this court at the time of argument and submission, took no part in the consideration or decision of this case.

STRINGER, J. Concurring in part, dissenting in part.

I agree with the conclusion of the majority that Minnesota's alternative minimum tax provision allowing a tax deduction for charitable contributions to charitable organizations "located in and carrying on substantially all of its activities within this state," but denying deductions to non-Minnesota charities, discriminates against interstate commerce and therefore violates the Commerce Clause of the United States Constitution. In doing so, we reverse the tax court, but because the tax court held the law constitutional, it went no further in its analysis. Thus the concept of severance of the unconstitutional provision of the statute and the remedy were not addressed by the tax court, and were neither briefed nor argued to this court. I therefore dissent from the court's ruling on those issues, as I think it is inappropriate for the court to address them in the absence of a record and briefing from the parties.

Relators offer no substantive suggestion as to how severance can be achieved and make only a passing reference to the remedy, and the Commissioner recommends that if this court rules the law unconstitutional, the matter be remanded to the tax court to determine what the legislature might have done had it known it could not constitutionally deny the deduction for contribution to out-of-state charities and at the same time allow it for in-state charities. I agree with the Commissioner's recommendation.

The majority relies heavily on the statutory principle of severance set forth in Minn.Stat. § 645.20:

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon the void provisions that the court cannot presume the

legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

*Id.*

Based on this principle of severance, the majority concludes that the only way to render constitutional Minnesota's disallowance of the deductibility of contributions to non-Minnesota charities, while allowing contributions to Minnesota charities, is to strike Minn.Stat. § 290.091, subd. 2(a)(2)(1994), the provision permitting the deduction of contributions to in-state charities. By doing so, the majority rules, the playing field is leveled because *all* contributions, whether to in-state charities or out-of-state charities, are denied.[1] The majority bases its severance remedy on a review of the legislative history of the alternative Minnesota tax provision, pointing out that it shifted from time to time, but historically seemed to favor a concept of disallowance of the charitable contribution. The fallacy of this analysis however, is that at best it relates to the legislative attitude toward allowance or disallowance over a broad span in history and is no value at all in arriving at a presumption as to whether the legislature enacting the current version of section 290.091, subd. 2(a)(2) in 1994 "would have enacted the remaining valid provisions without the void one." I see no basis for the conclusion of the majority, and on a matter of great importance relating to tax policy, the tax court should hold an evidentiary hearing to permit the parties to produce evidence as to what tax policy actually drove the legislation—the general rule of permitting deductions for all charitable contributions, or a special rule for AMT taxpayers denying the deduction. In the absence of a record on the issue, the court could well have reached a result opposite from the conclusion reached by the majority.

My further concern is that while the majority raises the question whether the curative interpretation of the statute should be applied prospectively only, it does not resolve the question. And while it rules that the relators are entitled to "backward looking relief" under *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), it seems to ignore the fact that in ruling that the offending provision of the statute is the allowance of deduction to in-state charities, and that this must be severed, there is "no backward looking relief" available to relators. They can't be allowed the deduction for their out-of-state contribution because the provision of the statute prohibiting allowance remains intact; and the obverse—disallowing their deductions for their in-state contribution—would surely be the most perverse of all "backward looking relief." Relators may have won the battle but they would surely have lost the war.

This conundrum seems wholly unnecessary. A remand to the tax court to fashion a severance under Minn.Stat. § 645.20 consistent with the court's unconstitutionality ruling will set the parameters for a remedy that does provide relators relief.

---

1. In reaching this conclusion, the majority notes that relators failed to explain how they get to their conclusion that all contributions should be exempt from the AMT, or to explain how severance of the statute could be fashioned to reach that result. This is not surprising, as the Commissioner notes, because the issue was not before the tax court, there was no record of any kind and neither the Commissioner nor relators addressed it to this court.